**Kenneth Michael KUNCE,
Plaintiff-Appellant,**

v.

**Kathryn Jean Schroeder BREEN,
Defendant-Respondent.**

No. 13261.

Missouri Court of Appeals,
Southern District,
Division Three.

May 17, 1984.

Don B. Sommers, Prudence W. Kramer, Don B. Sommers, Inc., St. Louis, for plaintiff-appellant.

Frederick H. Schwetye, Theodore G. Pashos, Union, for defendant-respondent.

MAUS, Judge.

By this action, the plaintiff seeks to recover for personal injuries suffered as a result of an automobile accident on April 11, 1978. The case was tried on January 25, 1983. The jury returned a verdict for the defendant. The plaintiff presents two points on appeal. A bare outline of the facts is sufficient for consideration of those points.

On the night in question, a group of young people were going in a motor vehicle caravan from the St. Louis area to the campground at Onondaga Cave. There were at least four vehicles in the caravan. After proceeding on I–44, the group turned south on Highway H in Crawford County. After a stop at a tavern in Leasburg, they continued south on Highway H. Highway H was a blacktop road, approximately 20 feet in width, with shoulders of 2 to 3 feet in width.

Upon leaving Leasburg, a van was in the lead. The van was towing a dune buggy. Apparently, trouble developed in the tow bar as the dune buggy started to weave. The van stopped to correct the trouble. The plaintiff stopped his automobile behind the van to give assistance. Two other vehicles in the group passed and stopped in front of the van. There was a dispute in evidence concerning whether the van, dune buggy and the plaintiff's automobile were wholly or partially in the south bound lane of travel of Highway H.

All of the vehicles in the caravan had stopped south of the crest of a hill. The rear of the plaintiff's automobile was 134 feet south of that crest. The defendant, a young woman 17 years of age, approached the scene from the north. She was going home. When she was near the crest of the hill, she saw vehicles in her headlights. She stated that she saw no lights on those vehicles and they were entirely in the south bound lane. She also stated there were persons standing in the north bound lane.

She tried to stop. Her automobile left 134 feet of skid marks but did not stop before hitting the rear of the plaintiff's automobile. At that time, the plaintiff was standing between the front of the dune buggy and the rear of the van. The collision knocked the plaintiff's automobile into the dune buggy. In turn, the plaintiff's right leg was pinned between the right

front tire of the dune buggy and the rear bumper of the van. That leg was severely injured.

Each party presented a qualified accident reconstruction expert. The expert employed by the plaintiff, John Senne, visited the scene. He positioned vehicles as the vehicles were at the time of the collision, in accordance with information supplied to him. Considering the condition of the road, the available sight distance, and using the defendant's estimated speed, he concluded the defendant could have stopped in time to avoid the collision. In reaching that conclusion, he considered her reaction time to be three-quarters of a second.

The defendant presented expert witness Wallace Diboll. He too visited the scene. He made much the same observations as those made by Senne. However, Diboll concluded that using the defendant's estimated speed, she could not have stopped within her sight distance. The appellant's two points of error concern the testimony of Diboll.

Diboll testified that in concluding the defendant could not stop, he took into consideration her "reaction time" and in addition, her "perception time". He explained that reaction time was the time required after perceiving danger to cause the foot to move from the accelerator and apply the brake. He recognized that time to be three-quarters of a second. He explained that perception time was the time required to perceive that what was seen was danger that required reaction. He said perception time depended on the person. But, at one point he estimated perception time to be half a second. After Diboll was excused as a witness, the plaintiff moved to strike and order the jury to disregard all testimony Diboll gave relative to any perception time as being an additional time for a person to stop. The plaintiff's first point is that the trial court committed reversible error in denying that motion.

To support that point, the plaintiff relies upon the proposition "[w]e have said we must take judicial notice that some time is required for the mind and muscular system to react to the appearance of danger, and three-quarters of a second is recognized unless a longer time affirmatively appears." *Davis v. St. Louis Public Service Company*, 316 S.W.2d 494, 498 (Mo.1958). Of course, this statement is followed in countless cases. *Hickerson v. Portner*, 325 S.W.2d 783 (Mo.1959); *McCreary v. Conroy*, 611 S.W.2d 234 (Mo.App.1980); *Gassiraro v. Merlo*, 589 S.W.2d 632 (Mo. App.1979). The plaintiff adds that there was no evidence the reaction time of the defendant was other than average. He contends the above judicially noticed proposition is irrefutable.

■ Whether or not evidence may be introduced to refute a judicially noticed fact is the subject of a difference in opinion. Annot., Judicial Notice—Rebuttal, 45 A.L.R.2d 1169 (1956). It is recognized the answer may depend upon the source of the judicially noticed fact. "The conclusiveness of the proof by judicial notice depends upon the certainty of the source of the information—among them, whether only from common knowledge ... or from the laws of nature ... or from the authority of statute ...." *Newson v. City of Kansas City*, 606 S.W.2d 487, 490 (Mo.App.1980) (citations omitted). However, generally, "the rule consistently followed in this State is that judicial notice is not conclusive and the fact of which notice is taken is subject to refutation." *Morrison v. Thomas*, 481 S.W.2d 605, 607 (Mo.App.1972). That rule has been applied to facts similar to the judicially noticed fact in question. *Zickefoose v. Thompson*, 347 Mo. 579, 148 S.W.2d 784 (1941); *Leh v. Dyer*, 643 S.W.2d 65 (Mo.App.1982); *Morrison v. Thomas*, supra.

■ However, for the resolution of this point it is not necessary to determine the admissibility of evidence of a perception time. Compare *Beesley v. Howe*, 478 S.W.2d 649 (Mo.1972); *Reed v. Burks*, 393 S.W.2d 377 (Mo.App.1965). If the admission of such evidence was error, that error was apparent when the evidence was offered. The plaintiff did not object to such testimony of Diboll. He conducted an ex-

tensive cross-examination on the subject of perception time. The applicable general rule was stated at an early date. "The general rule is that where a party fails to object to incompetent evidence, and it has been received absolutely and unconditionally, and not upon an unperformed promise to show its relevancy, it afterward cannot be stricken out." *Hickman v. Green*, 123 Mo. 165, 187, 22 S.W. 455, 458 (1893) (Sherwood, J., dissenting). The motion, made after Diboll was excused as a witness, came too late. *Watson v. Landvatter*, 517 S.W.2d 117 (Mo. banc 1974); *Home Exchange Bank of Jamesport v. Koch*, 32 S.W.2d 86 (Mo.1930). The plaintiff's first point is denied.

■ The plaintiff's second point is the trial court erred in allowing Diboll to testify, in answer to a hypothetical question, concerning the position of the vehicles in the roadway at the time of the collision. It is established that such a conclusion based upon a hypothetical question is not admissible to establish a point of impact. *Housman v. Fiddyment*, 421 S.W.2d 284 (Mo. banc 1967). Also see *Holtmeyer v. Scherer*, 546 S.W.2d 29 (Mo.App.1976).

■ In considering this point, it must be noted the expert witness presented by the plaintiff testified that the right skid mark of the defendant's automobile started 3 feet east of the west edge of the road and angled slightly east "to the point of impact". At this point he stated the right skid mark was 6 feet west of the center line. It is not necessary to further consider if such testimony constituted a waiver of the right to object to the opinion of Diboll. *Butler v. Crowe*, 540 S.W.2d 940 (Mo.App.1976). Nor is it necessary to fully develop the testimony of Diboll to determine if that testimony falls within the condemnation of *Housman*. Rule 78.07 clearly provides, with exceptions not here applicable, "allegations of error to be preserved for appellate review must be included in a motion for a new trial . . . ." In his motion for a new trial, the plaintiff asserted error in admitting the testimony of Diboll concerning reaction and perception time.

There was no mention of his testimony concerning the position of the automobiles at the time of impact. This rule is mandatory in character. *Bowman v. Burlington Northern, Inc.*, 645 S.W.2d 9 (Mo.App. 1982). The alleged error complained of in the plaintiff's second point was not preserved for review. *Hensic v. Afshari Enterprises, Inc.*, 599 S.W.2d 522 (Mo.App. 1980).

■ A request that this point be considered as "plain error" would be unavailing. In view of the testimony of Senne and the totality of the evidence, the action of the trial court could not be said to have resulted in manifest injustice or a miscarriage of justice. *Lindsey v. Pettus*, 604 S.W.2d 747 (Mo.App.1980); *Norfolk & W. Ry. v. Riss Intern. Corp.*, 560 S.W.2d 332 (Mo.App.1973). The plaintiff's second point is denied and the judgment is affirmed.

GREENE, C.J., CROW, P.J., and HOGAN and PREWITT, JJ., concur.